UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE APPLICATION OF THE NEW YORK TIMES COMPANY IN THE MATTER OF COLUMBIA UNIVERSITY APARTHEID DIVEST | No. 25-mc-218 |

**MEMORANDUM OF LAW IN SUPPORT OF
THE NEW YORK TIMES COMPANY'S MOTION TO UNSEAL**

The New York Times Company ("The Times") respectfully submits this memorandum of law in support of its motion seeking an order unsealing materials (the "Materials") and hearing transcripts ("Transcripts") related to the federal investigation into the organization known as Columbia University Apartheid Divest ("CUAD"). As reported in *The New York Times* and confirmed by the Department of Justice ("DOJ"), DOJ has sought, and been denied, a search warrant for records related to CUAD in an action heard by Chief Magistrate Judge Sarah Netburn.[1] Because the Materials and Transcripts are sealed, we do not know the full scope of the judicial documents pertaining to the warrant, nor are we able to locate the miscellaneous index number for the matter. But it is clear from public descriptions of the case, including statements from DOJ, that unsealing of those records is dictated both by federal common law and by the First Amendment.[2] Release of the documents will shed light on an internal debate within DOJ over the propriety of investigating protest activities that may be lawful under the First

---

[1] Devlin Barrett, *Orders to Investigate Columbia Protesters Raised Alarms in Justice Dept.*, N.Y. Times (May 1, 2025), https://www.nytimes.com/2025/05/01/us/politics/columbia-protests-justice-department.html ("Times Article").

[2] The right of access is an affirmative public right, and the press's standing to enforce it is well settled. *See, e.g.*, *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 609 n.25 (1982); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004).

1

Amendment and of using compulsory process to target speakers whose views are adverse to the current administration, as well as on whether the courts are overstepping their role in monitoring criminal investigations.[3]

## FACTUAL STATEMENT

As reported in the Times Article (attached here as Exhibit A), Deputy Attorney General Todd Blanche publicly disclosed that the warrant application was focused on CUAD. The application sought user data related to CUAD's Instagram account, including data about "a photograph from CUAD's social media of an inverted triangle symbol used by Hamas to designate targets for violence, which was spray-painted on Columbia property along with red paint designed to look like blood." The Court on at least two occasions rejected the search warrant applications, citing prosecutors' failure to establish probable cause and concerns that the Government's investigation would infringe the First Amendment rights of those associated with CUAD. In addition, the Court ordered the Government to include a transcript of those proceedings with any future warrant application for the data.

Mr. Blanche also noted that the warrant application was related to an investigation into "harboring and concealing illegal aliens" and that a magistrate judge had found probable cause to believe there was evidence of that crime on Columbia University property. He was apparently referring to an investigation that is now the subject of civil litigation by a Columbia student who is seeking to prevent her deportation, *Chung v. Trump*, No. 25-cv-2412-NRB (S.D.N.Y.).

---

[3] The Government, asked for its position on this motion, said it will review The Times's papers and reserves its rights to object to the motion.

Importantly, the Government has not opposed the unsealing of warrant materials related to the *Chung* case. *See Chung*, ECF No. 26 at 1 n.3.

## ARGUMENT

Both federal common law and the First Amendment endow the public with a right of access to judicial documents, including search warrant materials. While that right can be overcome by countervailing interests in some circumstances, this case presents a particularly compelling case for openness. If, as the Court believes, public resources are being misused to violate the First Amendment rights of individual citizens, the public has a right to know about such potential abuses of powers undertaken in the name of the people. Conversely, if the Government is correct, and the courts are hindering an important investigation into terrorism-related activities, the public's need to know is equally implicated. There is no reason to leave the public in the dark and compelling reasons for providing much-needed transparency.

I.  The Common-Law Right of Access Requires that the Materials and Transcripts Be Unsealed

Second Circuit law governing the public's common-law right of access to judicial documents is well established. Every "judicial document" is subject to a presumption of access. *Lugosch v. Pyramid Co.*, 435 F.3d 110, 119 (2d Cir. 2006). The Second Circuit, among other federal appellate courts, has squarely held that search warrant materials are judicial documents to which the common-law right of access attaches. *See In re Application of Newsday, Inc.*, 895 F.2d 74, 79 (2d Cir. 1990) (affirming order releasing search warrant affidavit based on common-law access right); *see also, e.g.*, *In re Boston Herald, Inc.*, 321 F.3d 174, 194 n.9 (1st Cir. 2003); *United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1194 (9th Cir. 2011). "Search warrants are unquestionably judicial documents because they themselves embody the

3

performance of judicial functions." *United States v. Cohen*, 366 F. Supp. 3d 612, 620 (S.D.N.Y. 2019).[4]

While the First Amendment right will also attach to many types of judicial documents, including the Materials and Transcripts sought here (see below), the Second Circuit has counseled that the courts first look to the common law, which can make resort to the Constitution unnecessary. *See Newsday*, 895 F.2d at 78. Under *Lugosch*'s common-law analysis, a presumption of access attaches to all judicial documents. 435 F.3d at 119. The weight of that presumption of access turns on the nature of the specific document at issue, taking into account "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)) (internal marks omitted). When the documents are central to the exercise of the Court's Article III powers, as is the case here, the presumption is at its strongest. *Id.* In contrast, when a document is filed simply to illuminate a civil discovery dispute, the presumption is lessened. *Id.* It then falls to the Court to weigh the presumption of access against any countervailing interests posed by the parties. *Id*. at 120; *see also Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 143 (2d Cir. 2016). This analytic framework is the same in criminal cases as in civil cases and is used to decide motions brought by news media intervenors. *See Gannett Media Corp. v. United States*, No. 22-2160, 2022 U.S. App. LEXIS 35099, at *8-12 (2d Cir. 2022) (finding justifications for redactions of court filings insufficient under common-law presumption of access).

---

[4] Court orders issued under 18 U.S.C. § 2703(d) – as well as applications for such – are likewise subject to a common-law right of access. *Leopold v. United States*, 964 F.3d 1121, 1128 (D.C. Cir. 2020); *In re Application of U.S. for Order Pursuant to 18 U.S.C. Section 2703(d)*, 707 F.3d 283, 290 (4th Cir. 2013).

> 1. *The presumption of access to the Materials and Transcripts is particularly weighty*

Courts within the circuit have recognized that the presumption of access to records related to search warrants should not be lightly set aside. Indeed, search warrant materials "go to the heart of the judicial function" because they inform the judicial determination to grant a search warrant, which in turn affects the rights of individuals to be free from unreasonable searches and seizures of their property. *In re Search Warrant*, No. 16-mc-464, 2016 U.S. Dist. LEXIS 178313, at *10 (S.D.N.Y. Dec. 19, 2016); *see also United States v. All Funds on Deposit at Wells Fargo Bank*, 643 F. Supp. 2d 577, 584 (S.D.N.Y. 2009). As one court in this circuit explained, documents "filed in connection with the two search warrants adjudicated the right of individuals under the Fourth Amendment not to be subjected to government intrusion absent a judicial determination of sufficient cause," a right "held among this country's highest values." *In re Sealed Search Warrants Issued June 4 & 5, 2008*, No. 08-M-208, 2008 U.S. Dist. LEXIS 107711, at *7 (N.D.N.Y. July 14, 2008). The result is that the presumption of access to search warrant materials carries "the maximum possible weight." *Id.* at *8; *see also Search Warrant*, 2016 U.S. Dist. LEXIS 178313, at *10; *Wells Fargo*, 643 F. Supp. 2d at 584.

Because the propriety of the warrants has been questioned by the Court, access to the Transcripts is particularly important. Those Transcripts would allow the public to monitor the performance of the Court, both in its assessment of probable cause and its safeguarding of individual liberty. Providing the public with the ability to oversee the function of the judiciary is at the heart of both the common-law and First Amendment rights of access. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980) ("People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing.").

Put simply, even if this investigation were not the subject of a consequential and now public controversy within the DOJ, the presumption of access would still be at its apex because search warrant adjudications play a crucial role in setting the relationship between individual liberty and state power. That the Court ordered the Government to include in any future warrant application a copy of the Transcripts only underscores the centrality of those documents to judicial decision-making here.

2.      *No countervailing factors overcome the presumption of access to the Materials*

The burden rests on the parties who seek to continue sealing to establish that countervailing factors should set aside the public's right of access. We know of none in the record as it stands. Typically, the countervailing factors that can overcome the presumption of access to a judicial document are "the danger of impairing law enforcement or judicial efficiency" or "the privacy interests of those resisting disclosure." *Bernstein*, 814 F.3d at 143. None of those factors carries significant weight here.

*First*, any risk of impairing law enforcement interests is minimal because the Deputy Attorney General has confirmed that there is an investigation of CUAD and that the Materials and Transcripts relate to it. *See id.* (interests favoring secrecy were "weak" because disclosure would not "reveal details of an ongoing investigation"). While in *Newsday*, 895 F.2d at 79, the Second Circuit noted that the case for access was strongest when a case had been concluded, the courts have made case-by-case determinations of when release could occur and what documents could be released. *See id.*; *In re Search Warrant Dated October 13, 2023*, No. 23-mc-389, 2023 U.S. Dist. LEXIS 188837, at *9-10 (S.D.N.Y. Oct. 20, 2023) (granting access while grand jury investigation was ongoing); *Sealed Search Warrants Issued June 4 & 5, 2008*, 2008 U.S. Dist. LEXIS 107711, at *14 (granting access to certain warrants while investigation was ongoing); *see also In re Search Warrant Dated November 5, 2021*, No. 21-mc-813, 2024 U.S. Dist. LEXIS

6

68998, at *13 (S.D.N.Y. Apr. 16, 2024) (release of warrant materials proper at close of investigation).

Here, the typical concerns about protecting an investigation – tipping off targets or those who possess evidence – ceased to exist with DOJ's public confirmation of the investigation. *See Search Warrant Dated October 13, 2023*, 2023 U.S. Dist. LEXIS 188837, at *10 (unsealing warrant affidavit despite ongoing investigation because "the Government's investigation is public"). To the extent there are any ongoing investigations related to this case and some risk arising from disclosure, any sensitive law enforcement information can be redacted to avoid that risk. *See United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995).

*Second*, speculation about potential future fair trial concerns do not justify the continued sealing. No charges have been brought, and any trial proceedings would be at some remove in the future. *See, e.g.*, *United States v. Graham*, 257 F.3d 143, 154 (2d Cir. 2001) ("speculative" risk to fair trial cannot overcome "strong" presumption of access to judicial records, and "voir dire and change of venue are sufficient to address any potentially prejudicial effects" of unsealing).

*Third*, any privacy interests in the Materials do not provide a basis for continued sealing. Before sealing is granted, there must be some legitimate and specific privacy interest to protect. *See, e.g.*, *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 170 (S.D.N.Y. 2018) (assertion of "generalized 'privacy interests'" insufficient to overcome right of access); *In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987) (extent of public knowledge of sealed material factors into a court's decision to grant access to judicial documents). To the extent that there is information that *is* genuinely private, it can be protected through targeted redactions, and The Times does not

oppose such redactions. *See Search Warrant*, 2016 U.S. Dist. LEXIS 178313, at *12 (redaction employed to protect privacy in disclosed warrant materials).

II.  <u>The First Amendment Right of Access Equally Compels Unsealing the Materials</u>

The legal principles governing the First Amendment right of access to judicial records are equally well settled and provide a second, independent basis for unsealing. The right attaches to a large array of judicial records and gives the public a constitutional right to inspect those records, absent a showing of an overriding public interest that justifies sealing. *See, e.g.*, *Lugosch*, 435 F.3d at 124 (common-law and constitutional right to judicial documents in civil case); *Pellegrino*, 380 F.3d at 92-93 (unsealing of court dockets under the First Amendment); *United States v. Suarez*, 880 F.2d 626, 630 (2d Cir. 1989) (First Amendment right to documents in a criminal case).

The Supreme Court has developed a two-part test, based on "experience" and "logic," for determining whether the First Amendment right attaches to particular documents. *See Press-Enter. Co. v. Super. Ct.*, 478 U.S. 1, 8 (1986); *see also Pellegrino*, 380 F.3d at 92. Under the experience prong, the court considers whether the document has historically been open to the public. *Press-Enter.*, 478 U.S. at 8. The logic prong concerns "whether public access plays a significant positive role in the functioning of the particular process in question." *Id.*

While the right of access is presumptive, the presumption can be overcome only if the Government or another party demonstrates that:

1. There exists a "substantial probability" that unsealing will cause harm to a compelling governmental interest;
2. There exists no reasonable alternative to adequately protect the threatened interest;
3. Any denial of access is narrowly tailored to serve that interest; and
4. A denial of access would prevent the harm sought to be avoided.

*Id.* at 13-14; *see also United States v. Doe*, 629 F. App'x 69, 72 (2d Cir. 2015). Further, the court must make "specific, on the record findings" supporting the denial of access. *Press-Enter.*, 478 U.S. at 13; *accord Lugosch*, 435 F.3d at 120.

The Second Circuit has not decided whether a First Amendment right of access applies to search warrant materials, *Newsday*, 895 F.2d at 78, although some district court decisions have declined to recognize the right in respect to warrant materials, *see Cohen*, 366 F. Supp. 3d at 628 (finding no constitutional right under the experience and logic test). And some courts of appeal have come to the same conclusion. *See, e.g.*, *In re Search of Fair Fin.*, 692 F.3d 424, 427 (6th Cir. 2012).

But more compelling is the Eighth Circuit's analysis in *In re Search Warrant for Secretarial Area Outside Off. of Gunn*, 855 F.2d 569, 575 (8th Cir. 1988) (holding that "the qualified first amendment right of public access extends to the documents filed in support of search warrants"). There, the court reasoned that while "the process of issuing search warrants has traditionally not been conducted in an open fashion, search warrant applications and receipts are routinely filed with the clerk of court without seal." *Id.* at 573. That public process, with its long history, sufficiently meets the experience test. As for the logic prong, as set forth above, access to search warrant materials aids the public in monitoring the Government's use of its extraordinary search and seizure powers. That facilitation of public monitoring is the very crux of the logic prong.

For the same reasons discussed in respect to the common-law right, the First Amendment right of access to the Materials and Transcripts is not overcome by any countervailing interest. Importantly, the Constitution imposes a heavier burden on those seeking sealing than the one imposed by the common law. *Lugosch*, 435 F.3d at 126. Where the First Amendment applies, it

can be "overcome only by an overriding interest based on findings that [sealing] is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enter.*, 478 U.S. at 9; *see also Lugosch*, 435 F.3d at 124. And the parties must show under *Press-Enterprise* that there is a "substantial probability" that the harms they proffer to justify sealing will come to pass if disclosure is granted. *Press-Enter.*, 478 U.S. at 14.

## CONCLUSION

For the foregoing reasons, The Times respectfully requests that the Materials and Transcripts be made public and that the Court grants such further and other relief that the Court deems just and necessary.

Dated: New York, New York
May 14, 2025

Respectfully submitted,

By: ___*/s/ David E. McCraw*___
David E. McCraw
Timothy Tai
Legal Department
The New York Times Company
620 Eighth Avenue
New York, NY 10018
Phone: (212) 556-4031
mccraw@nytimes.com

*Counsel for The New York Times Company*

10