**Jonathan Wallace, Esq.**
**PO #728**
**Amagansett, New York 11930**
**917-359-6234**
**jonathan.wallace80@gmail.com**

May 27, 2025

Magistrate Sarah Netburn
United States District Court,
Southern District of New York

*By electronic filing*

                                               Re: *Application of the New York Times Company in the matter of Columbia University Apartheid Divest* (1:25-mc-00218)

Dear Magistrate Netburn:

      As a pro bono attorney representing many Columbia students who are members of or affiliated with Columbia University Apartheid Divest ("CUAD"), I make this letter motion for leave to file an amicus brief in opposition to unconditional disclosure of confidential student records to the *New York Times*. For convenience, I include both the motion and the proposed letter brief in the body of this letter.

      Although the Federal Rules of Civil Procedure make no provision for amicus briefs, which are mentioned only in Federal Rule of Appellate Procedure 29, it is very well established that a District Court "has broad discretion to grant or deny an appearance as amicus curiae in a given case....A court may grant leave to appear as an amicus if the information offered is timely and useful", *Andersen v Leavitt,* 2007 US Dist LEXIS 59108, at *5-6 (EDNY Aug. 13, 2007, No. 03-cv-6115 (DRH) (ARL)) . Amicus briefs may be submitted by letter, *Mullins v City of NY,* 653 F3d 104, 110 (2d Cir 2011), *cert. den.* 565 U.S. 1275 (2012); *Wilson v Merrill Lynch & Co.,* 671 F3d 120, 128 (2d Cir 2011).

      I believe that the information I offer is timely and useful, and will not be presented to the Court

1

by the *New York Times* or the government.

**Interest of the amicus.** I am a New York attorney with a full time *pro bono* practice representing students and faculty being investigated, disciplined, censured or terminated for opposition to Israel and for pro-Palestinian expression. I have approximately sixty Columbia student, faculty and staff clients. I am counsel for the plaintiffs in the following actions against Columbia, Mohamed *Abdou v. Columbia University et al,* (Supreme Court, New York County, Index: 157845/2024) (visiting faculty); *Khymani James v. Columbia University (*Supreme Court, New York County, Index: 655038/2024) (suspended student); *Catherine Curran-Groome et al v. Columbia University (*Supreme Court, New York County, Index: 650605/2025) (suspended and expelled students); and I am co-counsel for plaintiffs in *Khalil v. The Trustees of Columbia University in the City of New York* (Southern District of New York 1:25-cv-02079) (students suing Columbia and the House Committee on Education and the Workforce to enjoin turn-over of student records).

Because of this background, I have extensive knowledge of the history of Columbia's interaction with the government, and its egregious violations of its students' FERPA rights in cravenly turning over records whenever requested. Among my student clients, most were affiliated with CUAD, some are international, and on both counts their student conduct files are likely to be included in the material the *New York Times* now seeks to unseal.

**Argument.** There has been extensive coverage in the media of the Trump administration's ongoing, intense bullying of Columbia, for example, Troy Closson, "What to Know About Trump Officials' Latest Move Against Columbia", *The New York Times* May 23, 2025 https://www.nytimes.com/2025/05/23/nyregion/columbia-trump-jewish-students.html ; Emily Tamkin, "This week proved it: Trump's approach to antisemitism at Columbia is horribly ineffective", *The*

*Forward* May 9, 2025 https://forward.com/opinion/718915/columbia-university-students-arrested-trump-antisemitism/ ; Reuters News Service, "Columbia University caves to demands to restore $400m from Trump administration", The Guardian, March 21, 2025 https://www.theguardian.com/us-news/2025/mar/21/columbia-university-funding-trump-demands

This Court will certainly also be familiar with the government's insensate assault on the civil liberties of international students at Columbia, including two green card holders, Mahmoud Khalil and Mohsen Mahdawi, and the President's rampant display of Islamophobia in his infamous post on X after Khalil was detained by plainclothes federal agents: "SHALOM, MAHMOUD". https://x.com/WhiteHouse/status/1899151926777749618

However, this campaign against elite universities including Columbia, was pioneered during the previous Presidential administration by the MAGA-dominated House Committee on Education and the Workforce, commencing with a hearing in December 2023 at which three presidents of other universities were grilled, harangued and bullied—resulting in the forced resignations of two of them. The House Committee summoned Columbia's then-president Minouche Shafik, who is Egyptian, Muslim, and a person of color (and was also soon forced to resign) for a hearing on April 17, 2024, at which Congressperson and Committee member Rick Allen of Georgia ranted at her: "[A]re you familiar with Genesis 12:3? ... It was a covenant that God made with Abraham and that covenant was real clear. If you bless Israel, I will bless you. If you curse Israel, I will curse you....Do you want Columbia University to be cursed by [the] God of the Bible?" (Transcript of the April 17, 2024 hearing before the U.S. House Committee on Education and the Workforce, titled "Columbia in Crisis: Columbia University's Response to Antisemitism", https://www.congress.gov/event/118th-congress/house-event/116973 )

Columbia by public report and its own admission voluntarily turned over a substantial number of FERPA-protected student conduct and Title VI files to the Committee. The history of these

3

interactions, beginning with a February 2024 letter demanding voluntary production of "all student disciplinary/conduct cases relating to alleged antisemitic incidents since October 7, 2023, or conduct related to the Gaza Solidarity Encampment, including the complete case files" is given at paragraphs 216-228 of the complaint in *Curran-Groome, supra,* which cites to articles in the *Columbia Daily Spectator* and elsewhere confirming the extent of Columbia's voluntary compliance.

The *Curran-Groome* complaint states: "During the [April 17] hearing, Chair of the House Committee Congresswoman Foxx specifically references the details of Plaintiff['s] ongoing disciplinary case, even though [Plaintiff] herself had not yet been provided with her evidence file, a hearing, or adjudication....In providing details of an ongoing disciplinary case to the House Committee, in violation of [Plaintiff's] FERPA rights, the Columbia administration knowingly endangered Plaintiff, while violating her privacy and due process rights". (paragraphs 218-219).

The Court may also take judicial notice of the Second Amended Complaint (Document #62) in *Khalil, supra,* which also describes in great detail the irreparable harm done by Columbia to its students, for example: "As detailed post, at ¶¶ 143-156, each of the Plaintiffs has been directly and indirectly harmed by the University's previous provision of their student records to the Committee, and based on that experience, have every reason to believe that further and irreparable harm will occur should the University turn over more of their private student records" (paragraph 10). It is also significant that the Court in that case has permitted all of the student plaintiffs who so requested to proceed under pseudonyms and to file their declarations under seal (Document #12).

Although the *New York Times'* desire to investigate and report on government Islamophobia and duplicity and Columbia's complicity is salutary, it should not be permitted to expose these students to even greater danger. Whatever care the *Times* might (or might not) take to protect student identities[1],

---

1  The *Intercept,* which has written to this Court supporting the *Times'* petition, infamously and incompetently outed its confidential informant Reality Winner, sending her off to prison, Tessa Stuart, "'Bitter,' 'Angry,' 'Enraged': Reality Winner Blasts the Intercept After 4 Years in Jail", *Rolling Stone Magazine,* November 24, 2021 https://www.rollingstone.com/politics/politics-features/reality-winner-interview-prison-nsa-1261844/

once unsealed these files are public for all purposes, and will become available to media with less honorable motives, for example, *The New York Post,* which delights in naming (and accusing of antisemitism, radicalism, etc.)  students  at Columbia and elsewhere who are not public figures, and publishing their photographs,  in articles such as Georgett Roberts, "These are the extremist student leaders of the anti-Israel protest camp bringing Columbia to its knees", *The New York Post,* April 27, 2024,

 https://nypost.com/2024/04/26/us-news/the-extremist-student-leaders-leading-columbias-anti-israel-camp/ As the *Khalil* complaint asserts in paragraph 3, public dissemination of their names and other private information exposes " the students to negative publicity and investigation, pervasive and persistent harassment, doxing, and threats to their safety and lives", which include death and rape threats, *Curran-Groome* paragraph 66.

    In making their names and files public, the *New York Times* would also expose Columbia students to even more scurrilous and dangerous attention, from doxing sites like Canary Mission, and from anonymous  Internet trolls who send hate speech and threats to their personal emails and cell phones, and contact their employers and parents.[2] Since the warrant denied by the magistrate in the underlying case alleged that Columbia was "harboring" illegal aliens-- referring to students validly here on visas which the government illegally revoked-- granting the *Times* petition is also likely to endanger the visa status of students not already arrested or deleted from SEVIS by the Trump administration.[3]

    *The Times* in its petition hand-waves away the students' privacy interests: "Third, any privacy interests in the Materials do not provide a basis for continued sealing" (p. 7). This is not so-- and

---

2  I represented a NYU undergraduate whose *New York Post* coverage led to trolls contacting her extended family in a foreign country. Most of my student clients have received this kind of frightening attention when their names are made public in connection with pro-Palestinian advocacy.

3  Though these students are already, of course, known to the government, disclosing their names publicly would probably result in social media campaigns to get them deported, in which Secretary of State Marco Rubio is tagged-- a tactic which seems to have successfully caused the detention of Mahmoud Khalil; see for example a March 6, 2025 post by Columbia business professor Shai Davidai directed to Rubio calling for Khalil's deportation, https://x.com/ShaiDavidai/status/1897794236797378640 Mahmoud was arrested two days later.

vividly demonstrates the dangers of ex parte petitions of this nature. While the Court ordered notice to the U.S. attorneys' office, it neither directed that notice be given to Columbia or the affected students. Had I not found out about this proceeding by happenstance, it might have been submitted to this Court without opposition.

Although there is no direct right of private action under FERPA, Courts must take students' FERPA rights into account in making decisions regarding the disclosure of student records. For example, in *Austin v Fordham Univ.,* 2024 US Dist LEXIS 62049, at *4 (SDNY Apr. 4, 2024), the Court approved a process requiring prior notification of affected students before their records were disclosed[4]; *see also In re Jewish Press, Inc. v. Kingsborough Community Coll.,* 201 A.D.3d 547, 549 (1st Dept. 2022) (New York Freedom of Information Law; "Existing case law likewise provided respondents with a reasonable basis for withholding student complaints as protected 'education records' under the Federal Educational Rights and Privacy Act (FERPA)").[5]

Given the complexity of the privacy issues, and the absence of any party who can be relied upon to argue student privacy rights, it is respectfully suggested that this Court consider appointing a "friend of the court" to represent student interests, *see United States v Adams,* 348 FRD 408, 409 (SDNY 2025) (Where "there has been no adversarial testing of the Government's position generally or the form of its requested relief specifically....precedent and experience have recognized the authority of courts to appoint an amicus to assist their decision-making").[6] This attorney, once appointed, should review the records in question, and independently decide whether to oppose their disclosure entirely, or

---

[4] "Consistent with the provisions of [FERPA] Section 1232g(b)(2)(B), the proposed Stipulation and Order provides for the students in question to be given advance notice and an opportunity to object, prior to any disclosure. The proposed Stipulation and Order also provides for the names and addresses of the students to be treated as Confidential Discovery Material under the terms of the Stipulation and Protective Order, dated March 11, 2024, previously entered in this case."

[5] The Appellate Division also properly pointed out that mere redaction of names is insufficient to protect student privacy. "Respondents also had a reasonable basis for finding that the student complaints could not be produced even if personally identifying information was redacted, as student complaints were detailed and redaction of personal identifiers would not prevent readers from deducing who the complainants were", I*n re Jewish Press, Inc. v Kingsborough Community Coll.,* 201 AD3d 547, 549 (1st Dept 2022).

[6] Though I would be thrilled to play that role, there are many attorneys better qualified in knowledge of applicable law and in public prominence-- though probably not with more direct experience of the situation at Columbia.

to participate in discussions or negotiations regarding confidentiality, redaction of records, and prior notice to affected students.

Sincerely,

/s/ Jonathan Wallace