# Exhibit G

XP3sWcua                          SEALED

```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   In the Matter of a Search Warrant
    Application to the CUAD Instagram        25 Mag. 997
4   Account.
                                             Telephone Conference
5   ------------------------------x

6                                            New York, N.Y.
                                             March 28, 2025
7                                            11:00 a.m.

8   Before:

9
                       HON. SARAH NETBURN,
10
                                        U.S. Magistrate Judge
11
                              APPEARANCES
12
    ALEC C. WARD
13  U.S. Department of Justice
    Criminal Section, Civil Rights Division
14

15  Also Present: ███████████████
                   ████████████████████  FBI
16

17

18

19

20

21

22

23

24

25
```

1    THE COURT:  Hi.  This is Judge Netburn.

2    Good morning.

3    Somebody's phone is cracking.  I wonder if before we

4    get started we can just figure out whose phone that is.

5    MR. WARD:  It began when the first court line joined,

6    your Honor.

7    THE COURT:  I can see who it --

8    (Indiscernible overlap)

9    THE COURT:  I can see which phone number is making the

10   noise, and it's one that's listed as anonymous.  So we'll

11   figure out who that is and ask that person to hang up and call

12   back.

13   Could everybody mute their phones.

14   MECHANICAL VOICE:  *Is now exiting.*

15   THE COURT:  All right.  There's a ███████ number; that

16   is not the problem.  There's a ███████ number; that is not the

17   problem.  There is my deputy and my chambers on the phone.

18   That is not the problem.  So whoever is the other person, maybe

19   it's the agent --

20   Yes.  OK.

21   MECHANICAL VOICE:  *Is now exiting.*

22   THE COURT:  OK.  I think that was our agent, so

23   obviously we want to get ██████ back.  Let's give ████ an

24   opportunity to call back in; hopefully ████ line will be clear.

25   MR. WARD:  Yes, your Honor.  I'm going to send ████ a

```
 1  message right now.

 2              THE COURT:  Great.

 3              (Indiscernible overlap)

 4              THE COURT:  Thank you.

 5      MECHANICAL VOICE:  Is now joining.

 6              THE COURT:  I think █ may have just joined us.

 7      ██████████, did you just join?

 8      ████████:  Hi, your Honor.  Yes.  This is ██████

 9  ██████.

10              THE COURT:  Right.

11              OK.  That seems to be slightly better.  And I'll just

12  ask if everybody can mute their line unless they are speaking.

13              Again, if everyone could just mute their line --

14  ████████, that's your phone.

15              ██████████:  I apologize, your Honor.  (inaudible)

16      THE COURT:  OK.  Thank you.

17      MECHANICAL VOICE:  Is now exiting.

18              THE COURT:  OK.  Hopefully █ can call back in.

19              And then if not, Mr. Ward, maybe you could just patch

20  ███ in.

21              MR. WARD:  Yes, I can.  I can attempt that (inaudible)

22  if ███ second line doesn't work.

23              THE COURT:  OK.  Thank you.  We'll just stand by for

24  one more second.

25              All right.  I think this is not going to work with ███
```

1      ██████  on this particular phone line.  Maybe, Mr. Ward, you can

2      call ██  and connect ██ .

3              MR. WARD:  I'll try that now.

4              THE COURT:  OK.  Thank you.

5              Agent ██████ , you should just hang up.

6              Mr. Ward, any luck?

7              MECHANICAL VOICE:  *Is now exiting.*

8              *Is now joining.*

9              ██████ :  Hi, your Honor.  This is ██████████ ,

10     trying from a different phone.

11             THE COURT:  OK.  Terrific.

12             All right.  This is the matter of a search warrant

13     application to the CUAD Instagram account.  I have assigned it

14     a docket number.  That number is 25 Mag. 997.

15             Can I just ask for counsel to state their appearances,

16     please.

17             MR. WARD:  Good morning, your Honor.  Alec Ward, for

18     the government.  On the line with me is (inaudible) Fitzgerald,

19     who is the principal deputy chief of the civil rights division,

20     criminal section.  And we also, I believe, have ██████████

21     from the FBI.

22             THE COURT:  Thank you.

23             OK.  This matter is on for the government's renewed

24     application for a warrant to search the contents and records of

25     an Instagram account as part of an investigation as to whether

XP3sWcua                          SEALED

 1  the user or users of the account have violated 18 U.S.C.

 2  Section 875(c), which makes it a crime to transmit in

 3  interstate commerce a communication that threatens to injure a

 4  person.

 5          In connection with this application, I have reviewed

 6  the affidavit of FBI Special Agent ██████████; the transcript

 7  of the March 25, 2025, proceeding before district Judge John

 8  Koeltl.

 9          I'll just note for the record that the transcript

10  cover page states that it was held on January 25.  I want to

11  confirm with the government that that is a typo and that the

12  conference was actually held on Tuesday, March 25.

13          Is that correct?

14          MR. WARD:  Yes, your Honor.

15          THE COURT:  OK.

16          In addition, I've reviewed a March 27, 2025, email

17  from AUSA Alec Ward, which provided me with the agent affidavit

18  and the March 25 transcript and four case citations with brief

19  discussions.

20          Mr. Ward, is there anything else that you intended for

21  me to review for today's proceeding?

22          MR. WARD:  No, your Honor.

23          There was a brief submitted to Judge Koeltl.  It was

24  after that hearing, you may have seen in the transcript a

25  reference to that; that was submitted under the government's

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

XP3sWcua                      SEALED

1    misapprehension that this matter was ripe for district court

2    review and so largely focused on the review standard.  We're

3    not asking that the Court consider that brief, and so we

4    haven't submitted it.

5            THE COURT:  OK.

6            I'll note, first, that you and I spoke off the record

7    before this proceeding this morning to discuss procedural

8    matters, and I requested that you provide me with a letter

9    brief that informs the government's legal and factual position

10   in support of this warrant application.  You declined to file a

11   letter because, you said, it would be too burdensome to get it

12   cleared by your supervisors and instead indicated that you

13   would email me case citations, which you have done, and that

14   you would otherwise rely on oral advocacy.

15           As you just noted, in reviewing the transcript, Judge

16   Koeltl made repeated reference to a 20-page memo that was

17   submitted to him, and he believed I should consider it.  And at

18   the conclusion of that proceeding, you told Judge Koeltl that

19   you would provide that memorandum to me.  But as you just

20   stated, that memo has not been provided to me so I don't have

21   the benefit of that analysis.

22           As I indicated, I've asked our clerk of court to open

23   a sealed case under docket number 25 Mag. 997, and I've

24   directed that the prior warrant applications from March 15 and

25   March 16 be docketed and denied and that the transcript from

XP3sWcua                          SEALED

1    Judge Koeltl's proceeding also be docketed.

2            At the conclusion of this proceeding, I'll direct that

3    the renewed application before me, which I'm calling the second

4    amended warrant application, also be docketed along with the

5    transcript from this proceeding.  But I will ask that Mr. Ward

6    submit to my chambers a copy of that 20-page memorandum that

7    was previously submitted to Judge Koeltl so that it can be made

8    part of the record.  OK?

9            MR. WARD:  Yes, your Honor.  We will do that.

10           THE COURT:  OK.

11           All right.  Before we address the merits of the

12    application, I think it's important to cover some foundational

13    issues.  The application for a search warrant is brought

14    pursuant to Federal Rule of Criminal Procedure 41.  Rule 41(b)

15    provides a magistrate judge with authority to issue a warrant.

16    If a magistrate judge is not reasonably available, an

17    application can be brought to a judge of a state court of

18    record in the district.  Given how the Southern District of New

19    York assigns matters, for all practical purposes, the

20    magistrate judge will always be reasonably available.

21           Rule 41(d) provides that after receiving an affidavit

22    or other information, a magistrate judge must issue the warrant

23    if there is probable cause.

24           Rule 41 does not require that the Court first place a

25    federal law enforcement officer under oath before considering

XP3sWcua                      SEALED

1    the affidavit.

2              As a matter of practice, in this district, the law

3    enforcement officer is not placed under oath unless and until

4    the magistrate judge is satisfied that the affidavit

5    establishes probable cause and that the warrant should issue.

6              Only once the Court is satisfied that the affidavit

7    establishes probable cause does the Court place the officer

8    under oath and then sign the warrant.

9              Rule 41 does not require or even provide any mechanism

10   for a magistrate judge to issue a reasoned decision if the

11   judge determines that there is no probable cause to support the

12   issuance of a warrant.  Although it happens exceedingly

13   infrequently in our district, when a magistrate judge denies a

14   warrant application, the judge simply advises the presenting

15   AUSA that the Court has not found probable cause and that the

16   warrant application is denied.  The clerk's office notes that

17   the application has been denied; there's no on-the-record

18   ruling.  That is what happened in this case, which is

19   consistent with the manner and form practiced in this district

20   for at least more than a decade.

21             Rule 41 also does not provide any mechanism to appeal

22   from the denial of a warrant application.  In our district,

23   where a magistrate judge is not satisfied that the agent

24   affidavit establishes probable cause, the Court may permit the

25   agent to file an amended affidavit.  This is what happened in

XP3sWcua                    SEALED

1    this matter, where the AUSA filed the original warrant

2    application on Saturday, March 15, which the Court denied, and

3    then filed an amended warrant application on Sunday, March 16,

4    which the Court also denied.  So I'm now considering a second

5    amended warrant application, which was submitted to me

6    yesterday, Thursday, March 27.

7            Finally, during your proceeding with Judge Koeltl, you

8    indicated that if I denied the second amended warrant

9    application, you would seek an appeal under 28 U.S. Code

10   Section 636(b).

11           Section 636 considers the jurisdiction and authority

12   of a magistrate judge.  Section 636(b) refers to matters that

13   are referred to a magistrate judge by a district judge and sets

14   forth the standards of review by a district judge of a

15   magistrate judge's decision, depending on whether that decision

16   was case-dispositive or not.

17           This matter has not been referred to me by a district

18   judge, nor could it be, because Rule 41 expressly and

19   exclusively vests the authority to issue a warrant in a

20   magistrate judge or a state court judge.  So to the extent the

21   outcome of today's proceeding is adverse to the government and

22   you intend to appeal that decision, you must provide the Court

23   with some authority for such appeal, which I do not believe is

24   Section 636(b).

25           Moreover, because Rule 41 expressly vests authority to

XP3sWCua                          SEALED

1    issue a warrant with a magistrate judge, to the extent your

2    appeal is more properly viewed as an application for a warrant

3    to the district judge, you're directed to provide authority

4    from this circuit for a district judge to issue a warrant in

5    the first instance.

6              Finally, I direct that to the extent the government

7    submits any subsequent warrant applications for this Instagram

8    account to a different judge, whether that's a district judge,

9    a magistrate judge or a state court judge, it must provide a

10   copy of today's transcript to that judge.

11             Mr. Ward, do you wish to be heard with respect to any

12   of these procedural matters that I've just discussed?

13             MR. WARD:  Regarding the -- regarding the ripeness

14   issue of any review, to the extent it's available, I think

15   likely, understanding your Honor's representations about this

16   Court's regular practice, I would simply say there was no

17   disrespect or ill will intended by the government towards your

18   Honor's ruling.  It may simply have been a matter of our

19   unfamiliarity as an office that hasn't routinely practiced in

20   this district for the last 25 years, to my knowledge, with the

21   Court's regular practice.  And I'll just note there was no ill

22   will and disrespect intended towards this Court in the

23   government's assessment of what avenues were available to it at

24   the time.

25             We had reviewed with the Southern District of New York

XP3sWCua                    SEALED

1    procedural posture of this matter and weren't confident that

2    sufficient jurisdiction existed for review by the district

3    court based on the ruling that had been issued by your Honor.

4    We accept your representations entirely that that's the normal

5    practice in the district.  We apologize for any deviation.

6            THE COURT:  No disrespect whatsoever?

7            People are free to appeal where there is an avenue of

8    appeal available.  It was clear to me from the proceeding

9    before Judge Koeltl that he was particularly interested in

10   following all proper protocol and procedures, and in reviewing

11   this matter back to me, I thought it was worth making clear

12   that I am unaware of any mechanism that both requires any sort

13   of reasoned decision by a magistrate judge who determines that

14   there's not probable cause to justify the issuance of a warrant

15   or that there is any avenue of appeal from such denial.  And

16   certainly to the extent there is some avenue of appeal, it is

17   not Section 636(b), because this matter was never referred to

18   this Court by the district judge.  And so that statute would be

19   inapplicable.

20           (Indiscernible overlap)

21           MR. WARD:  Nothing further.

22           THE COURT:  Go ahead.

23           Oh, OK.

24           Now that we've covered some of the procedural issues

25   raised in the application, we can turn to the merits.  Although

XP3sWcua                          SEALED

```
 1    I've indicated there is no obligation that the Court first
 2    swear in the agent before considering the issue, because this
 3    issue appeared to be of concern to Judge Koeltl, I'll do so
 4    now.
 5                    ██████████, are you still with us?
 6                    ████████:  Yes, your Honor, I am.
 7          THE COURT:  OK.  I have an affidavit.  It seeks to
 8    search an Instagram account.  Can you give me the name of the
 9    Instagram account at issue here?
10                    ████████:   Yes, your Honor.  It's @CUAPARPHDIDDIDEST.
11          THE COURT:  Thank you.
12          All right.  I have your agent affidavit.  It was
13    submitted to me yesterday, March 27.
14          Do you have the same thing?
15                    ████████:  Yes, your Honor, I do.
16          THE COURT:  OK.  And I have your signature line on
17    page 26.  Is that what you have?
18                    ████████:  I have page 25, your Honor.
19          THE COURT:  OK.  And are you looking at a PDF page or
20    a page numbering?
21                    ████████:  I'm looking at a page numbering.
22          THE COURT:  Mr. Ward, please make sure that your agent
23    and I have the same document.
24          MR. WARD:  Yes, Judge.
25          I believe, ████████, you may be looking -- what we're
```

1  calling, I suppose, the first amended application and the

2  second amended application are identical except for the

3  addition of two additional images.  ███████, I believe you

4  may be looking at the first amended application.  I will

5  re-forward you the second amended application right now.  Just

6  noting that the only difference, I think, is in -- the

7  difference in pagination accounts for the space taken up by an

8  additional image.

9              ███████:  OK.

10             THE COURT:  And I'll just confirm that the amended

11  agent affidavit that was submitted to me on March 16 does have

12  your signature line on page 25.  We're now considering the

13  second amended warrant application, submitted on March 27,

14  which has your signature line on page 26.  And as Mr. Ward

15  indicated, I believe there is just one additional post that is

16  added to this application, but I want to make sure that you are

17  swearing to the application that's being presented to me.

18             ███████:  Yes.  Thank you, your Honor.  I'll let you

19  know as soon as I receive it.

20             Alec, did you send it already?

21             MR. WARD:  Yes.

22             ███████:  OK.  I'm standing by to receive it.

23             OK.  Alec, I received your email.  Can you tell me

24  what paragraph the renewed image of that is?

25             MR. WARD:  The additional images, ███████, are the

XP3sWcua                    SEALED

1   ones we reviewed in our call-in preparation for this hearing.

2   They're on pages -- the second image on page 13 of this

3   document and the top of page 17 of this document.

4              █████████: Yes, your Honor.  I am familiar with these

5   posts and discussed these with Alec Ward.

6            THE COURT:  OK.  Thank you.

7            Kindly raise your right hand, Agent ██████.

8              █████████: Yes, your Honor.  It's raised.

9            THE COURT:  Do you solemnly swear that the information

10   contained in this affidavit is true and complete, so help you

11   God?

12              █████████: Yes, your Honor, I do.

13            THE COURT:  OK.  And do you authorize me to sign this

14   electronically on your behalf?

15              █████████: Yes, your Honor, I do.

16            THE COURT:  OK.  I will go ahead and include your

17   signature and sign the agent affidavit for the second amended

18   search warrant application, and this will become part of the

19   record.

20            All right.  I understand, Mr. Ward, from this

21   application that the threat at issue in this case is the

22   statement, "Katrina Armstrong, you will not be allowed peace"

23   Is that correct?

24            MR. WARD:  I would say alongside the transmission of

25   the image of the Columbia University president's residence

1  spattered with a substance simulating blood and marked with the

2  inverted triangle symbol, collectively, that transmission

3  constitutes the utterance under investigation.

4        THE COURT:  Understood.  Great.  And context does

5  matter.

6        In *United States v. Garnes*, 102 F.4th 628, which is a

7  Second Circuit decision from 2024, the Court of Appeals

8  explained that, "the literal threatening words may take on

9  greater or lesser seriousness from the additional statements

10 that surround them."

11       I'm also relying on *United States v. Segui*, 2009 WL

12 8487291, a citation from the Eastern District of New York from

13 December 2, 2019, where the court found that events in the

14 "days leading up to and the day after the threat would

15 constitute direct evidence as to whether an ordinary recipient

16 would interpret the communication as a threat."

17       I understand that the statement at issue here that you

18 attribute to CUAD is "Katrina Armstrong, you will not be

19 allowed peace," read in the context of the posting of this

20 image, which includes the inverted triangle, you believe that

21 that constitutes a threat.

22       Is that correct?

23       MR. WARD:  I think it may even be slightly more

24 nuanced than that under these circumstances, your Honor.

25       For the true-threats analysis, the purpose -- I don't

XP3sWcua                    SEALED

1    want the condition that the statement "you will not be allowed

2    peace" is sort of the absolute necessary condition.  I think

3    under the right circumstances -- obviously, the blood spatter

4    and the defacement of the residence are not transmissions in

5    interstate commerce; those were done face to face in Manhattan

6    by people with paint.  But I think under the right

7    circumstances it would be possible even for an uncaptioned

8    image of that threat if retransmitted with the intent to

9    intimidate, interfere or place a person in fear, with the

10   intent to communicate an expression of intent to commit

11   unlawful violence, the image itself could be sufficient to

12   present probable cause under these circumstances for the 875(c)

13   offense.  But I think here our contention is it's the image and

14   the -- the image and the caption taken together.

15           THE COURT:  The statute criminalizes communications,

16   right?  That's all that the statute criminalizes.  Agreed?

17           MR. WARD:  Yes.  Yes, your Honor.

18           THE COURT:  The case law, including very recent Second

19   Circuit case law, talks about how context matters.  And so I

20   understand that the application is that in the context of that

21   image, the statement "you will not be allowed peace" could be

22   interpreted as a true threat.  But the communication at issue

23   here is simply that statement, "you will not be allowed peace."

24   You're not arguing that the image is the communication.

25           MR. WARD:  I think we're arguing that the image

1  (inaudible) the communication, but under these circumstances,

2  the communication is the image alongside the statement.

3          Maybe an analogy to a more familiar fact pattern from

4  my office might help.  (inaudible) have routinely prosecuted --

5  I'm not saying that the conduct is exactly equivalent, but

6  symbolic -- in terms of symbolic threats -- my office has

7  routinely prosecuted, under various threat statutes, the

8  burning of crosses outside (inaudible) residences.  Were such

9  an event videotaped and posted online, (inaudible) would

10  (inaudible) but with, under certain (inaudible) suggesting an

11  intent to communicate that, to send that communication, that

12  video, to someone who would be threatened by it, I think we

13  would take the position under that case that the posting and

14  the transmission of the video itself could be a prosecutable

15  threat under 875(c) even in the absence of any words, text.

16          Likewise, in (inaudible) graffiti, which we've also

17  seen an uptick in lately, if (inaudible) graffiti is

18  photographed and transmitted to someone and without additional

19  verbal communication, written words, a commission, we would

20  take the position, could be communication of a threat to

21  injure.

22          THE COURT:  OK.  Understood.

23          I will consider the communication at issue to be the

24  statement "you will not be allowed peace" and the inverted

25  triangle that was depicted on the video.

XP3sWcua                    SEALED

1          In *Counterman v. Colorado*, which is a directly

2     relevant case from the Supreme Court, which I'll note you did

3     not cite to me in your email, it addressed what constitutes a

4     true threat:  "True threats are serious expressions conveying

5     that a speaker meant to commit an act of unlawful violence."

6          In that case as well as in *Elonis v. United States*,

7     which is a 2015 Supreme Court case, the Supreme Court clarified

8     that "the existence of a threat depends not on the mental state

9     of the author but on what the statement conveys to the person

10    on the other end."  In other words, the Supreme Court has

11    explained:  "Whether the speaker is aware of and intends to

12    convey the threatening aspect of the message is not part of

13    what makes a statement a threat.  Only when the statement is

14    understood as a true threat does it fall outside of the

15    protections of the First Amendment."

16         Mr. Ward, is there anything in the agent affidavit

17    that states how Ms. Armstrong has interpreted this statement?

18         MR. WARD:  There's not, your Honor.  And I don't -- I

19    don't dispute the relevancy of the reaction of the recipient.

20    And I think *Counterman* and *Elanis* and a long line of

21    true-threat cases establish that the reaction of the threat

22    recipient is highly relevant to the true-threats analysis.  I

23    think what -- I'm familiar with the *Counterman* case, and the

24    (inaudible) that the Supreme Court set in *Counterman* resolved

25    this predictive split about the *mens rea* out -- or the *mens rea*

XP3sWcua                    SEALED

1   requirement for (inaudible), including 875(c), and established

2   that the required minimum showing by the government is that the

3   communicator acted at least with reckless disregard as to

4   whether the communication would be taken as a threat.  That is,

5   I think, precisely the kind of evidence that there is probable

6   cause to believe this warrant, if issued, might develop.  We --

7   I will not represent to your Honor at this point that we

8   have -- we have evidence showing the communicator's state of

9   mind, but the warrant, if issued, I think, is highly likely to

10  provide relevant and admissible evidence on that point.

11          THE COURT:  OK.  But you have no information at this

12  stage in the investigation about how Ms. Armstrong interpreted

13  the statement, correct?

14          MR. WARD:  We have not had an opportunity to put that

15  question directly to Ms. Armstrong at this point.

16          THE COURT:  Have you spoken to her about this

17  application and about your threat concerns?

18          MR. WARD:  My understanding -- and this is

19  secondhand -- is that the FBI, upon learning of this post,

20  communicated with the president's office at Columbia, conveying

21  its belief that the threat should be taken seriously from a

22  security standpoint.  I do not know whether Ms. Armstrong

23  expressed feelings on that point, but I do know -- I've been

24  told by people who were involved in those conversations that

25  the FBI alerted the Columbia president's office that it

XP3sWcua                    SEALED

1    considered this as a threat.

2            THE COURT:  OK.  Thank you.

3            All right.  I don't need to go over the legal research

4    that I've done on my end to evaluate and consider these

5    applications.  I've certainly read the four cases that you

6    submitted to me.  I'll just state that I think some of your

7    representations were not fully, did not clearly represent what

8    the case law is, including your representation that the case

9    *Malik* stands for the proposition that the test is an objective

10   one, just like you included in your email to me.

11           As you've just indicated, the Supreme Court over the

12   last ten years has made clear that there's both an objective

13   and subjective element to the statute.  And there have been a

14   number of cases out of the Second Circuit making clear exactly

15   what sort of speech constitutes a true threat.  I cited to you

16   the *Garnes* case, which is just from last year, which makes

17   clear that words that may reflect heated rhetoric, in the

18   context in which they are made would not reasonably engender

19   fear, do not constitute a true threat.

20           I've reviewed the agent affidavit alongside of these

21   cases.  I understand the argument that's being presented and

22   the view that that statement of "there will be no peace"

23   alongside the symbol that is used, as the agent represents, by

24   Hamas as part of its propaganda, including to designate targets

25   for attack, but there's no evidence here that that symbol is

XP3sWcua                         SEALED

1  being used here in the United States to designate an act of

2  violence.

3           When I spoke with the AUSA in between the first and

4  the second applications, I asked that specific question,

5  whether there was any evidence indicating that that inverted

6  triangle was being used here in the United States specifically

7  as a call to violence or whether there's been any examples of

8  that triangle being identified and a subsequent act of violence

9  following.  And there hasn't been any presentation presented to

10  me demonstrating that.  In fact, the presentation seems that it

11  has been co-opted as part of the protest movement here, but as

12  to the specific issue of a threat of violence, the government

13  hasn't met its burden to establish that that symbol, in the

14  context here and in the context of the statement that the

15  president of Columbia University will not have peace, is a true

16  threat, as the law identifies.  And so I stand by my initial

17  position.  I do not believe the government has established

18  probable cause that the user of the Instagram account has

19  violated 18 U.S.C. Section 875(c), because it hasn't

20  established that a true threat was made.

21           That is my final decision.  As I indicated, to the

22  extent you believe an appeal is warranted, you must set forth a

23  legal basis for doing so.  Any subsequent application for a

24  warrant to search this Instagram account must include a copy of

25  this transcript for that court's consideration.

XP3sWcua                         SEALED

1          I will grant the government's request to seal this

2     transcript and the docket for 90 days in light of the potential

3     threat in continuing the investigation on the matter.

4     Obviously, to the extent you are submitting this transcript to

5     another court, as I've directed, you don't need to make an

6     application to unseal it for that purpose.

7          Any further applications, Mr. Ward?

8          MR. WARD:  Understanding your Honor's ruling, I'd like

9     to make a brief record on the government's position on a

10    procedural matter relevant to the true-threats analysis here,

11    with leave of Court, just for my record, since we are making a

12    transcript.

13         THE COURT:  OK.

14         MR. WARD:  The government submits that it's premature

15    for the Court to engage in a true-threats analysis at this

16    stage in the proceeding.  The test for whether a statement or a

17    writing constitutes a true threat is, it's nuanced, it's

18    contextual, highly fact-bound.  A wide range of circumstances

19    may bear on whether a given utterance or transmission satisfies

20    that legal standard.  When the government seeks a warrant to

21    investigate whether sufficient evidence exists to establish

22    that a statement that can rationally be perceived as a threat

23    is prosecutable or protected, it's our position that a court

24    reviewing a warrant in that posture need not, and indeed may

25    not, undertake to perform the highly fact-bound true-threats

XP3sWcua                    SEALED

1    analysis, and binding Second Circuit precedent reserves that

2    question for trial jury.

3              The government's position is that the First Amendment

4    protection for political hyperbole, abstract -- (inaudible)

5              It's the government's position that where a statement

6    can rationally be taken as threatening unlawful harm to a

7    particular person, the First Amendment's protection for

8    political hyperbole, abstract advocacy of violence -- here,

9    satire and sarcasm -- supply a constitutional defense available

10   at trial, not a legal immunity from investigation or

11   prosecution.

12             When the court, as here, reviews an application for a

13   search warrant to investigate a possible threat (inaudible) one

14   to decide whether the sworn representations in the application

15   establish probable cause to believe that a crime has been

16   committed, under the totality of the circumstances, and using

17   nonformalized fair probability assessments from probable cause

18   case law, the government submits that the application before

19   your Honor easily clears that low threshold and should be

20   granted.

21             THE COURT:  Thank you.  I appreciate your statements.

22             I obviously reviewed the cases that you submitted, and

23   those cases discuss the role of the judge and the jury at

24   trial.  Obviously, that's a different question than what's

25   presented before me here.  My analysis is to determine whether

XP3sWcua                          SEALED

1   or not there is probable cause to believe that a crime has been

2   committed.  For the reasons that I've stated, I don't think the

3   government has met its burden here.

4           I appreciate your record.

5           All right.

6           MR. WARD:  Understood.

7           THE COURT:  Anything further, Mr. Ward?

8           MR. WARD:  Not at this time from the government, your

9   Honor.

10          THE COURT:  OK.

11          All right.  As I indicated, this transcript will be

12  filed under seal.  I'll direct that the government order a copy

13  of the transcript and submit it to my chambers so I can make

14  sure that it is docketed on the case matter that has been

15  opened for this case.

16          Again, to the extent you believe that there is an

17  opportunity to file an appeal, such appeal should include a

18  copy of this transcript so that that judge understands what the

19  Court's ruling is.

20          All right.  Thank you, everybody.

21          We're adjourned.

22          (Adjourned)

23

24

25